Entered on Docket
September 30, 2009
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed: September 29, 2009

_____
EDWARD D. JELLEN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                    No. 09-43135 J7
                                         Chapter 7
PACIFIC ROLLFORMING, LLC
dba TRAKLOC PACIFIC,

                    Debtor./

### DECISION

This is a contested involuntary chapter 7 case in which Pacific Rollforming, LLC, the above debtor ("Pacific"), opposes entry of an order for relief on the ground that one or more of the petitioning creditors are not qualified petitioners. Alternatively, Pacific contends that the court should abstain from proceeding with this case because abstention would be in the best interests of Pacific and its creditors.

The matter having been tried before the court, the court holds that Roni Dersovitz ("Dersovitz") is not a qualified petitioner. The court also holds that, even if Dersovitz were a qualified petitioner, abstention would be in the best interests of Pacific and

Decision

its creditors. The court will therefore issue its order dismissing this chapter 7 case.

A. <u>Background</u>

The backdrop for this case is a complex history of failed negotiations, lawsuits - still pending, false starts, unconsummated agreements, and competing aspirations regarding the intellectual property rights for a proprietary steel framing system known as Trakloc.

Pacific claims to hold a license to manufacture the Trakloc product in various states, but the validity of the license is disputed by the licensor (via various assignments), Trakloc North America ("TLNA"). TLNA is controlled by a David Jablow ("Jablow"). Pacific has commenced litigation against TLNA, Jablow, and others in connection with the disputed license, and counterclaims against Pacific in that action are pending. (This litigation, pending in the United States District Court for the Southern District of California, is herein after referred to as the "San Diego litigation.")

Pacific also claims it is owed royalties from its sublicensee, Trakloc Midwest, but Trakloc Midwest denies liability. Pacific has two lawsuits currently pending against Trakloc Midwest to collect royalties, and Trakloc Midwest is the plaintiff in a pending suit for damages against Pacific.

In past years, the principals of some of the entities claiming an interest in the Trakloc product have made efforts, in various combinations, to "roll-up" <u>i.e.</u>, combine, all of the various Trakloc

Decision    2

licensees into a single entity.  For example, petitioner Marc
Bernstein ("Bernstein") and petitioner Dersovitz, currently among
the defendants in the San Diego litigation, were among the
principals of an entity called Part 47, Inc., which they formed to
acquire the Trakloc technology and which is a defendant in the San
Diego litigation.  At one point, Part 47 entered into an agreement
with Pacific to combine their interests.  That effort fell apart in
a storm of accusations and counter-accusations.

    The foregoing licensing and financial disputes led to Pacific's
economic collapse.  Pacific is currently out of business.  Its
litigation efforts against TLNA, Jablow, Trakloc Midwest, Dersovitz,
Bernstein, Part 47, and others is generally being funded with
advances from the personal funds of Todd Beasley ("Beasley"), who is
the president and 58% owner of Pacific's shares of stock.

    The three involuntary petitioners herein are Dersovitz, JDY
Automation Robotic Technology ("JDY"), and Bernstein.  Dersovitz's
claim is in the sum of $8,278.11 and he acquired his claim in
exchange for the sum of $2,500 by way of assignment from Samco
Machinery, Ltd. ("Samco").  Pacific disputes that Dersovitz is a
qualified petitioner for reasons hereinafter discussed.

    The second petitioner herein is JDY, whose claim is in the sum
of $875.00.  Jablow agreed to pay Dennis Liggett, JDY's president, a
fee of $650 per day, plus travel expenses (meals, hotel, airfare)
for his testimony in connection with the trial of this involuntary
petition.

Case: 09-43135    Doc# 40    Filed: 09/29/09    Entered: 09/30/09 08:40:56    Page 3 of 13

Bernstein is the third petitioner, and claims that Pacific owes him $98,170 in connection with a loan.

On April 16, 2009, Dersovitz, JDY, and Bernstein filed their involuntary chapter 7 petition against Pacific.

Pacific has conceded that it is the type of entity that "may be a debtor" under chapter 7 of the Bankruptcy Code within the meaning of § 303(a).[1]  See § 109(b) (regarding the types of entities qualified for chapter 7 relief). Pacific has also conceded that it is not generally paying its debts as they come due. See § 303(h)(1).

Pacific disputed a number of the other allegations of the involuntary petition, and the matters at issue proceeded to trial.

B. <u>Did Three Qualified Petitioners File the Involuntary Petition?</u>

Section 303(b)(1) provides:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title--
>
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

Pacific concedes that petitioner JDY is a qualified petitioner under § 303(b)(1), but contends that Dersovitz and Bernstein are not. The court holds that although JDY and Bernstein are qualified

---

[1] Except as otherwise stated, all further section references herein are to the Bankruptcy Code, 11 U.S.C. § 101 et. seq., as amended effective October 17, 2005.

Decision 4

petitioners, Dersovitz is not a qualified Petitioner. Fed. R. Bankr. P. 1003(a). Consequently, the involuntary petition herein was not filed by three or more qualified entities as required by Bankruptcy Code § 303(b)(1).

The court will first address Dersovitz's eligibility. Bankruptcy Rule 1003(a) provides, in relevant part:

> A transferor or transferee of a claim shall annex to the original and each copy of the petition a copy of all documents evidencing the transfer . . . and a signed statement that the claim was not transferred for the purpose of commencing the case . . . . An entity that has transferred or acquired a claim for the purpose of commencing a case for liquidation under chapter 7 or for reorganization under chapter 11 shall not be a qualified petitioner.

Pacific contends that Dersovitz acquired Samco's claim for the purpose of commencing the present involuntary case, and thus, that Dersovitz is not a qualified petitioner. Fed. R. Bankr. P. 1003(a). Dersovitz denies this allegation. The weight of the evidence, however, supports Pacific's contention.

First, On May 15, 2009, Dersovitz filed a Declaration stating, in relevant part: "On or about April 17, 2009, I acquired the claim of Samco Machinery Limited against Pacific Rollforming, LLC for the sum of $2,500." No evidence suggested that the one-day difference between the date of Samco's assignment to Dersovitz and April 16, 2009, the date of the involuntary petition, was mere coincidence.[2]

---

[2] Dersovitz apparently filed the Declaration to remedy a defect in the Involuntary Petition in that it failed to include that statement that the claim was not acquired for purpose of commencing the case, as required by Fed. R. Bankr. P. 1009(a).

Decision 5

Secondly, Dersovitz's testimony about the timing of the
assignment was nonsensical.  Dersovitz, who is a licensed attorney,
testified that he had negotiated the assignment with Samco in
December 2008 and that although the assignment did not "close" until
April 17, 2009, Samco actually assigned him the claim in December
2008, prior to the closing of the assignment transaction.

        This nonsensical contention is meritless, not only as a matter
of law (how can an effective assignment be made before the
assignment is made?), but under the facts present here.  Dersovitz's
contention as to a December assignment clearly conflicts with his
sworn Declaration filed May 15, 2009.  In addition, Pacific
introduced into evidence an e-mail dated April 8, 2009 from Sheldon
Basch, Samco's vice president, advising Dersovitz with reference to
the contemplated assignment that "Upon receipt of the funds, we will
execute the assignment."  Thus, absent payment for Samco's claim
against Pacific, which Dersovitz had not made by April 8, 2009,
there was commitment by Samco to make an assignment.

        Pacific also introduced into evidence an e-mail dated April 4,
2009 from Jablow to Samco informing Samco that Dersovitz "will be"
purchasing Samco's claim against the debtor, again contradicting
Dersovitz's testimony that there had been an assignment the previous
December.

        Dersovitz's insistence that he acquired Samco's claim in 2008
when all the facts, including his own Declaration, show otherwise,
casts serious doubt as to the credibility of all of his testimony.

Decision                                6

Moreover, Dersovitz testified that his interest in obtaining the assignment was based on the advice of his counsel to the effect that obtaining Samco's $8,278.11 claim against Pacific would be a good "defensive" maneuver because he anticipated that Pacific was going to sue him. To the same effect is Dersovitz's Declaration of May 15, 2009, wherein he states that he acquired Samco's claim to obtain a "setoff in other litigation and/or for the purpose of negotiating leverage with the principals of Pacific Rollforming."

This contention does not square with the other evidence presented. The issues between Dersovitz and Pacific involve sums that dwarf the $8,278.11 claim Dersovitz acquired for "negotiating leverage."[3] In addition, Dersovitz failed to explain why Jablow, who controls TLNA, felt the need to be involved in the Samco assignment or to advise Samco on April 4, 2009 that Dersovitz would be the assignee of Samco's claim.[4]

The weight of the evidence established that Dersovitz acquired Samco's claim for purposes of becoming an involuntary petitioner herein. The court therefore holds on the authority of Fed. R. Bankr. P. 1003(a) that Dersovitz is not a qualified petitioner.

---

[3]Dersovitz notes, correctly, that Pacific did not move to amend its complaint in the San Diego litigation to add Dersovitz as a defendant until after the filing of the Involuntary Petition herein. But Dersovitz testified that he was aware of Pacific's intention to sue him as early as the preceding December, some four months prior to the date of the Petition.

[4]Pacific had sued Jablow and TLNA in the San Diego litigation no later than October 12, 2007, the date of a First Amended Complaint in that action.

Decision 7

By virtue of this holding, the issue of Berstein's qualification to be an involuntary petitioner does not affect the result here. Even so, the court will address the issue in the interest of a complete record, and holds that Bernstein is a qualified petitioner.

Pacific concedes that, as a co-borrower, it was a party to a $100,000 promissory note in Bernstein's favor dated July 13, 2007, that Bernstein advanced Pacific the funds, and that Bernstein has not been repaid.[5] Pacific raises two arguments why Bernstein is not a qualified petitioner, neither of which the court believes to be well grounded. First, Pacific contends that under certain agreements executed about the time of the promissory note, an understanding had been arrived at that entities other than Pacific would be the parties liable under the note. However, nothing in evidence supports this argument, and Pacific presented no evidence that Bernstein released it from liability.

Second, Pacific contends that Bernstein had assigned his claim against Pacific to Dersovitz, and is no longer the holder of the claim. Although Pacific introduced into evidence a letter Dersovitz had signed and sent to certain addressees claiming that Bernstein had assigned him any funds he was owed regarding Trakloc, Pacific did not introduce into evidence any assignment executed by Bernstein of Pacific's $100,000 note to his order or, for that matter, any

---

[5] Although Bernstein has been scheduled by the parties to testify at trial, he was unavailable. The parties stipulated that his testimony could be dispensed with.

Decision 8

other assets. Moreover, the language of the Dersovitz's letter, even if construed to include the note, is strongly suggestive that any assignment by Bernstein was an assignment for security, rather than an outright unconditional assignment.

The court holds, solely for purposes of the present involuntary petition, that Bernstein is a qualified petitioner herein.

Even so, because Dersovitz is not a qualified petitioner, dismissal of this involuntary case is appropriate. Bankruptcy Code § 303(b)(1).

C. <u>Are the Interests of Creditors and Pacific Better Served by Abstention?</u>

Even if Dersovitz were a qualified petitioner, the evidence established that abstention is appropriate in this case. Section 305(a)(1) provides:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if--
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension.

This provision is applicable to the dismissal of involuntary petitions. <u>In re Macke International Trade, Inc.</u>, 370 B.R. 236 (9th Cir. BAP 2007). <u>In re Westerleigh Development Corp.</u>, 141 B.R. 38 (Bankr. S.D.N.Y. 1992).

Here, there is little, if any, dispute that dismissal would be in the best interest of Pacific.

As to the best interests of creditors, the conclusion is inescapable that this involuntary petition is basically a litigation

Decision 9

tactic on the part of those that oppose Pacific's claims in the San Diego litigation.

Jablow and Pacific's licensor, TLNA, which Jablow controls, are among Pacific's litigation opponents in the San Diego litigation and hold claims that are subject to bone fide dispute. Therefore, they are not qualified petitioners. Section 303(b)(1). But Jablow did participate in the assignment to petitioner Dersovitz of Samco's claim. Jablow also agreed to fund the expenses of, and pay a fee to, Dennis Liggett, the president of petitioner JDY, in connection with this case. And the amounts Jablow paid Liggett must have been far in excess of the amount of JDY's $875 claim against Pacific. At trial, Liggett was asked why Jablow would be interested in paying him a daily fee plus expenses in exchange for his testimony, and Liggett, unconvincingly, responded that he had no idea.

Petitioner Dersovitz is a defendant in the San Diego litigation, and is a principal of Part 47, another defendant in that litigation whose Trakloc related claims are adverse to those of Pacific. Petitioner Bernstein is also a defendant and a principal in Part 47. Another defendant in the San Diego litigation is an entity called Floating Assets, Ltd., which, according to Dersovitz, is controlled by his wife.

Pacific lacks the funds to prosecute and defend the counter-claims in the San Diego litigation. Rather, Beasley is funding the litigation out of his personal funds. The petitioners must surely know that if an order for relief is entered herein, and control of the San Diego litigation thus passes to a trustee without resources,

Decision                                10

Beasley would have no commitment and little incentive to continue to fund the litigation, and that the prospects of Pacific's litigation opponents for a quick or inexpensive resolution would surely improve.

Moreover, no creditor that is not currently litigating against Pacific has elected to join in the involuntary petition, notwithstanding extensive efforts on the part of the petitioners to persuade another creditor to join.[6]

Beasley testified without contradiction that Pacific's assets, apart from its claims in litigation, include several truckloads of parts that Pacific has not been able to sell and which, if sold, would only go for "scrap." Pacific also has some hand tools and compressors that Beasley testified, without contradiction, have a value of some $3,000 - $4,000.

Clearly, the best prospects for Pacific's creditors, other than its litigation opponents and the involuntary petitioners herein, are dependant on Pacific's success as to its litigation claims. Equally clear, based on the facts that Pacific's litigation expenses are being funded by Beasley personally, and that a trustee would not have the resources to prosecute these claims, is that the best prospects for Pacific to achieve such success would be outside of bankruptcy, i.e., if this court were to abstain.

---

[6]Section 303(c) permits additional creditors to join in an involuntary petition "before the case is dismissed or relief ordered."

Decision 11

D.  <u>Conclusion</u>

   The court holds that Dersovitz is not a qualified involuntary petitioner herein.  The court further holds that abstention would be in the best interests of Pacific and its creditors within the meaning of Bankruptcy Code § 305(a).  For the foregoing two independent reasons, the court will issue its order dismissing this involuntary petition.

                            **END OF ORDER**

| | |
|---|---|
| 1 | COURT SERVICE LIST |
| 2 | Leonard M. Shulman, Esq.<br>Shulman Hodges & Bastian LLP |
| 3 | 26632 Towne Centre Drive, Suite 300<br>Foothill Ranch, CA 92610-2808 |
| 4 | |
| 5 | Frederick C. Phillips, Esq.<br>Phillips, Haskett & Ingwalson |
| 6 | 701 "B" Street, Suite 1190<br>San Diego, CA 92101 |
| 7 | Marc Bernstein |
| 8 | 330 E. 33rd Street, Apt. 4M<br>New York, NY 10016 |
| 9 | Dennis Liggett<br>P.O. Box 329 |
| 10 | Goodlettsville, TN 37070 |
| 11 | Office of the U.S. Trustee<br>1301 Clay Street, Suite 690-N |
| 12 | Oakland, CA 94612 |

Decision                                          13